# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BERNIE B. CLEVELAND, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL NO. 08-cv-371-DRH ) |
| ROGER E. WALKER, JR., et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

Plaintiff Bernie B. Cleveland, an inmate in the Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. On April 21, 2009, Cleveland filed a second amended complaint (Doc. 10), but less than three weeks later he filed a motion seeking to dismiss that pleading (Doc. 11). This motion is **GRANTED**; the second amended complaint (Doc. 10) is **STRICKEN**.

This case is now before the Court for a preliminary review of the amended complaint (Doc. 9) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

**COUNT 1**

On December 14, 2007, Defendant Young took Cleveland to an orientation meeting run by Defendant Hartman. At the conclusion of that session, Cleveland asked for some grievance forms. As Cleveland had just arrived at Pinckneyville, Hartman expressed surprise that he would have need of those forms. Cleveland explained that he needed to file a grievance over denial of medical care, and also over his missing property box. He was not given the forms, and apparently a verbal altercation ensued. Hartman wrote a disciplinary ticket charging Cleveland with disobedience and insolence. Meanwhile, Young escorted Cleveland to the segregation shower and turned him over to Defendant Runyon. Runyon advised Defendant Couleas[1] not to give Cleveland any property, and Couleas followed orders: Cleveland was not given any bedding or hygiene items.

In protest, Cleveland embarked on a three-day hunger strike. During that time, he alleges that he made numerous requests to Defendants Owens, Couleas, Hagger, Baker, Stanton, Townsend, Mason, Hartman, and Turner for those items, but he did not receive any property.[2] On December 17, Defendant Austin spoke with Cleveland, and then with Defendants Frieman and Owens, regarding the situation. Eventually Cleveland ended his hunger strike and filed a grievance over his property, which apparently had disappeared en route from Stateville to Pinckneyville.

---

[1] This Defendant is mistakenly identified as "Coyleas" in the docket.

[2] Cleveland also states that each asked each person to get him medical treatment, but he does not state why he felt the need to see a doctor.

In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element – establishing a defendant's culpable state of mind. *Id.*

In *Harris v. Fleming*, 839 F.2d 1232 (7th Cir. 1988), the Seventh Circuit considered an inmate's claim that he was denied toilet paper for five days and denied soap, a toothbrush and toothpaste for ten days, while "he was kept in a filthy, roach-infested cell." *Id.* at 1234. The Circuit noted that "[i]nmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate confinement." *Id.* at 1235-36. The Circuit then noted that "[a]lthough Harris experienced considerable unpleasantness, he suffered no physical harm," *id.* at 1235, and found that the conditions simply did not rise to the level of an Eighth Amendment violation.

In this case, it appears that Cleveland was without bedding and hygiene items for just three days. Moreover, like Harris, he makes no allegation that he suffered any physical harm as a result of these deprivations. Accordingly, Cleveland has failed to state a claim upon which relief may be granted, and Count 1 will be dismissed from this action with prejudice.

**COUNT 2**

When Cleveland was at Stateville, he had one of his teeth extracted. Apparently part of that tooth was not removed, causing him pain when he ate. After his arrival at Pinckneyville, he made numerous requests for medical attention. More than a month elapsed before he got any response to

3

his sick-call requests.

The Seventh Circuit has recognized that dental care is "one of the most important medical needs of inmates." *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Furthermore, allegations that an inmate denied his dentures could not chew his food, making eating difficult, and that he suffered bleeding, headaches, and disfigurement, state a serious medical need. *Id.*

Applying these standards to the allegations in the amended complaint, the Court is unable to dismiss this claim against the medical personnel – Defendants Hill, Tracy, Lane, Farris, Nacey and Gardner. Likewise, his allegations against Defendants Baker and Turner (Doc. 9, p. 16, ¶ 21) preclude dismissal of these two defendants.

However, like many other inmates, Cleveland seems to think that any prison employee who knows (or should know) about his problems has a duty to fix those problems. That theory is in direct conflict with the well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions). As Chief Judge Easterbrook recently stated,

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. Burks's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and

> then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care. *See Durmer v. O'Carroll*, 991 F.2d 64 (3ᵈ Cir. 1993).

*Burks*, 555 F.3d at 595.

Cleveland's allegations against the remaining correctional officers and administrators are overly generalized and thus fail to state a claim upon which relief may be granted. Accordingly, Defendants Walker, Heartline, Townsend, Couleas, Owens, Dolce, Kisro, Young, Stanton, Hagger, Frieman, and Mason will be dismissed with prejudice from this count.

## COUNT 3

In this count, Cleveland complains about four different disciplinary actions taken against him. In addition to the individuals directly involved in each proceeding, Cleveland also implicates Defendant Walker for his failure to investigate the shortcomings of these proceedings.

### *Incident on December 14, 2007*

This ticket, issued by Defendant Hartman, charged Cleveland with insolence, disobeying a direct order, and unauthorized movement (Doc. 9, pp. 37-38). The Adjustment Committee, comprised of Defendants Blades and McBride, found him guilty of the first two charges. He was punished with one month at C-grade and one month in segregation. The decision was approved by Defendant Austin.

### *First Incident on January 15, 2008*

This ticket, issued by Defendant Young, charged Cleveland with insolence, disobeying a direct order, and violation of rules (Doc. 9, pp. 41-42, 47). The Adjustment Committee, comprised of Defendants Davenport and McBride, found him guilty of the first two charges. He was punished

with on month at C-grade and one month in segregation. The decision was approved by Defendant Austin.

*Second Incident on January 15, 2008*

This ticket, issued by Defendant Couleas, charged Cleveland with intimidation or threats (Doc. 9, pp. 43-44, 48). The Adjustment Committee, comprised of Defendants Davenport and McBride, found him guilty. He was punished with two months at c-grade and two months in segregation. Defendant Austin approved the decision.

*Incident on February 13, 2008*

This ticket, issued by Defendant Spiller, charged Cleveland with providing false information to an employee (Doc. 9, pp. 39-40, 49-50). The Adjustment Committee, comprised of Defendants Blades and Jordan, found him guilty. He was punished with three months at C-grade, three months in segregation, and revocation of three months of good conduct credit. The decision was approved by Defendant Austin.

*Issues Raised*

With regard to each of these proceedings, Cleveland alleges that proper due process was not afforded him, in violation of his rights under the Fourteenth Amendment.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals

has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In this case, Cleveland was sentenced to disciplinary segregation for an aggregate period of seven months. Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Therefore, his due process claim is without merit with respect to the first three tickets.

A loss of good conduct credit, however, does implicate a liberty interest because such a loss potentially affects the length of Cleveland's sentence. As such, he does present a cognizable due process claim regarding good time credit revoked in the February 2008 disciplinary proceeding. However, the proper method for challenging the revocation of good time credit is habeas corpus, but only after he has exhausted his remedies through the Illinois state courts. *See, e.g., Heck* v. Humphrey, 512 U.S. 477, 480-81 (1994). The Illinois courts have recognized mandamus as an

appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill.App. 1981)). The State of Illinois must first be afforded an opportunity, in a mandamus action pursuant to 735 ILCS 5/14-101 *et seq*. to consider the merits of his claim. Accordingly, this claim is dismissed without prejudice to Cleveland bringing this claim in a properly filed habeas corpus action, **but only after he has exhausted his state court remedies**.

In short, Count 3 will be dismissed in its entirety.

## COUNT 4

In his fourth claim, Cleveland states that in January 2008, he filed an emergency grievance with respect to his safety concerns. In his grievance, he explained that in 1992, he had testified on behalf of the I.D.O.C. with regard to a murder that had occurred at Pontiac in 1990. He further explained that he had learned that a member of the Vice Lords was also housed at Pinckneyville, and thus he feared that his life might be threatened. Cleveland alleges that he raised his concern to Defendants Walker, Heartline, Austin, Kisro, and Spiller, none of whom conducted a proper investigation of his concerns.

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Luttrell v. Nickel,* 129 F.3d 933, 935 (7th Cir. 1997). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that

danger. *Id.; Reed v. McBride,* 178 F.3d 849, 852 (7th Cir. 1999).

Cleveland makes no allegation that any inmate actually made any threats against him, nor does he allege that he was ever harmed. Moreover, exhibits attached to the amended complaint detail the investigation conducted into Cleveland's claims (Doc. 9, pp. 39, 49-50). Not only were his allegations investigated, but his fears were proven to be unfounded. In addition, some of his allegations were found to be false, thus giving rise to the fourth disciplinary ticket (discussed above in Count 3).

Accordingly, Cleveland has failed to state a claim upon which relief may be granted, and Count 4 will be dismissed in its entirety.

**COUNT 5**

In his final count, Cleveland makes sweeping, generalized claims of retaliation and conspiracy against virtually all defendants.[3] Essentially, he believes that Defendants conspired to issue false disciplinary tickets and deny his grievances.

Civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under section 1983). "[I]t is enough in pleading a conspiracy to indicate the parties, general purpose, and approximate date." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002). However, conspiracy is not an independent basis of liability in § 1983 actions. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). "For liability under § 1983

---

[3] In fact, Cleveland incorporates these same sweeping allegations into Count 3 and Count 4. However, the Court finds it appropriate to consider these allegations as one separate claim.

to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).

As discussed above in Count 3 and Count 4, Cleveland was not deprived of any of his constitutional rights with respect to the disciplinary proceedings, his apparently false claims regarding his security concerns, and his grievances regarding those issues. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff had access to the grievance procedure but he did not obtain the outcome he desired).

As for the basis of this alleged conspiracy, Cleveland cries "retaliation." The Seventh Circuit recently clarified that

> if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983. *See Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper."); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner); *Cornell*, 69 F.3d at 1389 (retaliatory discipline).

*Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). In this case, the Court cannot discern what the claimed basis is for this alleged retaliation. Cleveland mentions the filing of a grievance against Spiller regarding the investigation of his security claims. The chronology set forth above puts that event at the end of the chain; it could hardly be argued that Defendants's prior actions were taken in retaliation for something that had not yet happened.

Accordingly, Cleveland has failed to state a claim upon which relief may be granted, and Count 5 will be dismissed from this action with prejudice.

**DISPOSITION**

**IT IS HEREBY ORDERED** that **COUNT 1, COUNT 3, COUNT 4** and **COUNT 5** are **DISMISSED** from this action with prejudice. Because no claims remain pending against them, Defendants **AUSTIN, BLADE, COULEAS, DAVENPORT, DOLCE, FRIEMAN, HAGGER, HARTMAN, HEARTLINE, JORDAN, KISRO, MASON, MCBRIDE, OWENS, RUNYON, SPILLER, STANTON, TOWNSEND, WALKER** and **YOUNG** are **DISMISSED** from this action with prejudice. Plaintiff is advised that, within the Seventh Circuit, dismissal of these claims and defendants counts as a strike for purposes of § 1915(g). *See George v. Smith,* 507 F.3d 605, 607-08 (7th Cir. 2007); *Boriboune v. Berge,* 391 F.3d 852, 855 (7th Cir. 2004).

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **BAKER, FARRIS, GARDNER, HILL, LANE, NACEY, TRACY** and **TURNER**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the amended complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **BAKER, FARRIS, GARDNER, HILL, LANE, NACEY, TRACY** and **TURNER** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the amended complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can

be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to

defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** of his continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts during the pendency of this action. This notification shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs. Failure to provide such notice may result in dismissal of this action. *See* FED.R.CIV.P. 41(b).

**IT IS SO ORDERED.**

**DATED:   July 9, 2009.**

　　　　　　　　　　　　　　　　　　　 /s/     DavidRHerndon
　　　　　　　　　　　　　　　　　　**CHIEF JUDGE**
　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**